## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DONNA S.B.,[1]                                         :
                                                       :
                           *Plaintiff,*                :              CIVIL ACTION
            v.                                         :              No. 25-317
                                                       :
FRANK BISIGNANO,                                       :
**Commissioner of Social Security,**                   :
                           *Defendant.*                :


## MEMORANDUM OPINION

**HON. JOSÉ RAÚL ARTEAGA**                                    **December 11, 2025**
**United States Magistrate Judge[2]**

The Commissioner of the Social Security Administration, through an
Administrative Law Judge ("ALJ"), determined that Donna S.B. was not disabled and
denied her application for Supplemental Security Income ("SSI") benefits under Title XVI
of the Social Security Act, 42 U.S.C. §§ 1381-1383. Donna S.B. seeks judicial review of the
final administrative decision pursuant to 42 U.S.C. § 405(g)[3] and asks the Court to reverse

---

[1] Donna S.B. is referred to solely by her first name and last initials in accordance
with this Court's standing order. *See* Standing Order, *In re: Party
Identification in Social Security Cases* (E.D. Pa. June 10, 2024),
https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_
pty-id-ss.pdf (last visited Dec. 4, 2025).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge
to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C.
§ 636(c). (*See* ECF 5.)

[3] 42 U.S.C. § 1383(c)(3) renders 42 U.S.C. § 405(g)'s judicial review provisions
applicable to claims for SSI.

and remand the Commissioner's decision. She contends that the findings of non-disability are "erroneous as a matter of law and unsupported by substantial evidence." (ECF 13 at 1.)

After careful review of the entire record, Donna S.B.'s request for review is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

Donna S.B. has a high school education and no past relevant work experience. (Tr. 51, 121.) She filed an application for SSI on October 16, 2017, alleging disability beginning that day due to the following impairments: neuropathy status post right breast cancer treatment; ilioinguinal neuralgia; interstitial cystitis; bilateral tendinitis of the shoulders; affective disorder diagnosed as adjustment disorder, depression and major depressive disorder; generalized anxiety disorder; and obesity. (Tr. 42, 109-10, 181.) The ALJ found these impairments to be severe, as they limit an individual's physical or mental capacity to perform basic work-related functions. (Tr. 42.) *See* SSR 85-28. The ALJ also determined that Donna S.B. suffered from the following non-severe impairments: kidney and urethral stones, and hypertension. (Tr. 42.)

At the time of her application, Donna S.B. was 45 years old: a "younger individual" under 20 C.F.R. § 416.963.[4] Initially, her claim for Social Security benefits was denied and

---

[4] An individual under the age of 50 is defined as a younger person, per 20 C.F.R. § 416.963. However, "in some circumstances, . . . persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. 20 C.F.R. § 416.963.

she timely filed a reconsideration request. On April 4, 2019, ALJ, Sharon Zanotto, conducted a hearing with Donna S.B., her counsel, and the Agency's Vocational Expert ("VE"). (Tr. 58, 97.) After considering the hearing testimony and administrative file in its entirety, the ALJ found that Donna S.B. was not disabled under the Social Security Act. (Tr. 52.) Donna S.B. sought Appeals Council review, which was denied on July 8, 2020.[5] (Tr. 12, 178.) The ALJ's decision, released on August 23, 2019, serves as the Commissioner's final act for purposes of this appeal.

In determining that Donna S.B. was not disabled, the ALJ employed the Social Security Administration's five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a). At step one, the ALJ found Donna S.B. had not engaged in substantial gainful activity since her application date. (Tr. 42.) In particular, Donna S.B. has not worked since 1998. (Tr. 69, 124, 190.) At steps two and three, the ALJ determined Donna S.B. suffers from the aforementioned impairments, but none of them or any combination of them met the medical severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*) The ALJ paid specific attention to Donna S.B.'s claimed major dysfunction of a joint but, in her view, the available medical evidence did not establish "the specific criteria required . . . ."[6] (Tr. 42-43.) Additionally, the ALJ found the evidence did not establish the

---

[5] This action was not filed until January 19, 2025 because the Appeals Council did not grant Donna S.B.'s request for an extension of time to file a civil action until December 19, 2024, four years after her original deadline, stating that it "regrets the delay involved." (*See* Tr. 7-9.)

[6] Listing 1.02 for major dysfunction of a joint requires gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal

requisites for peripheral neuropathy—"such as disorganization of motor function in two extremities resulting in an extreme limitation in ability to stand up from a seated position, balance while standing or sitting, or use the upper extremities." (Tr. 43.) *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 at 11.14 (defining the characteristics of peripheral neuropathy). The ALJ also determined that there was no evidence to show that Donna S.B.'s interstitial cystitis equaled a listed impairment, "either alone or in combination." (Tr. 43.) Likewise, the ALJ "fully considered obesity in the context of the case record" and determined that it did "not equal a listing alone or in combination with another impairment(s)." (*Id.*)

The ALJ also considered the severity of Donna S.B.'s mental impairments, both singly and in combination, but determined they did not meet or medically equal the "Paragraph B" or "Paragraph C" criteria outlined in 20 C.F.R. § 416.920a.[7] (Tr. 43-44.) According to the ALJ, Donna S.B. had mild limitations in understanding, remembering, or applying information and interacting with others and moderate limitations in concentrating, persisting, or maintaining pace and adapting or managing herself. (Tr. 44.) In addition, the record did not establish that Donna S.B. had "a minimal capacity to adapt to changes in [her] environment or to demands that are not already part of [her] life." (Tr. 44-45.) The ALJ noted that Donna S.B. "reported that she is able to function and perform activities of daily living." (Tr. 45.)

---

motion, resulting in inability to perform fine and gross movements, per 20 C.F.R. Pt. 404, Subpt. P, App'x 1 at 1.02.

[7] *See infra*, Part II, Section B (explaining the evaluation process for mental impairments).

At step 4, the ALJ determined that Donna S.B. had the residual functional capacity[8] ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b). In making this finding, the ALJ considered all of Donna S.B.'s symptoms, medical evidence, and the medical opinions and prior administrative medical findings. (Tr. 45, 48-50.) The ALJ found that Donna S.B. could "adequately perform many basic activities associated with work" (Tr. 51), including lifting and carrying ten-to-twenty pounds occasionally, standing or sitting for a maximum of eight hours, walking for a maximum of three hours, pushing and pulling with her upper extremities, and operating foot controls with her lower extremities. (Tr. 45.) The ALJ explained that Donna S.B. is limited to occasional reaching in all directions, crouching, kneeling, stooping, balancing, climbing ramps, stairs, ladders, ropes, scaffolding, and crawling. (*Id.*) According to the ALJ, Donna S.B. cannot read small print and can only tolerate occasional exposure to temperature extremes, moving mechanical parts, and unprotected heights. (*Id.*) Further, she is limited to occasional decision making, interaction with supervisors, coworkers, and the public and to no work setting, process or tool changes. (*Id.*)

At step 5, the ALJ considered Donna S.B.'s age, education, work experience, and RFC, alongside the VE's testimony. Given these factors altogether, the ALJ found that Donna S.B. was capable of making a successful adjustment to other work existing in

---

[8] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (*e.g.*, pain). 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 416.945(a)(2).

significant numbers in the national economy, citing the VE's testimony that a hypothetical individual with Donna S.B.'s age, education, work experience, and RFC would be able to perform the requirements of occupations including conveyor line worker, machine tender, and fruit distributor. (Tr. 51-52.) Accordingly, the ALJ concluded that Donna S.B. was not disabled within the meaning of the Social Security Act and therefore not entitled to SSI benefits. (Tr. 52.) She made her determination "[a]fter careful consideration of the entire record . . . ." (Tr. 42.)

Following the Appeals Council's denial of Donna S.B.'s request for review, she properly filed her appeal in this Court.

## II.    LEGAL STANDARD[9]

### A.    The Social Security Administration's Five-Step Evaluation Process.

Operating through ALJs, the Social Security Commissioner administers a five-step sequential evaluation process to determine whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 416.920(a). The Commissioner considers whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals a listed

---

[9]  The regulations governing claims for SSI, which can be found at 20 C.F.R. Part 416 and governing claims for Social Security Disability Insurance Benefits, which can be found at 20 C.F.R. Part 404 "are, as relevant here, not materially different." *Sims v. Apfel*, 530 U.S. 103, 107 n.1 (2000). Because the test for determining whether a person is disabled "is the same" for either class of benefits, the Court may consider case law developed under either provision in reaching a decision.  *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

impairment;[10] (4) has the RFC to perform past relevant work;[11] and (5) is able to perform any other work that exists in the national economy, considering the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(i)-(v). The claimant bears the burden of proof on all steps, except step five. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). At step five, "the Commissioner bears the burden of establishing the existence of jobs in the national economy that an individual with the claimant's impairments is capable of performing." *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014); *see also Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001) (explaining that the Commissioner must account for the claimant's age, education, work experience, medical and mental impairments, and RFC when establishing the availability of work the claimant can perform).

### B.    Mental Impairments Analysis at Steps Two and Three.

When mental impairments are alleged, the ALJ's evaluation includes additional inquiries layered on top of the five-step disability analysis. *See Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). These inquiries are described as a "special technique," which becomes operative at step two of the analysis. 20 C.F.R. § 416.920(a). At step two, the ALJ first uses the Psychiatric Review Technique ("PRT") to determine whether the

---

[10] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Pt. 404, Subpt. P, App'x 1.

[11] If the claimant does not have any past relevant work, the disability analysis proceeds to the fifth and final step.

claimant has a medically determinable mental impairment. 20 C.F.R. § 416.920a(b)(1); *Rebecca L. v. Comm'r of Soc. Sec.*, 617 F. Supp. 3d 256, 268 (D.N.J. 2022) ("When there is evidence of a mental impairment that allegedly prevents a disability claimant from working, the Commissioner is required to evaluate the claimant's mental impairments by use of a PRT.") The PRT requires the ALJ to assess the degree of functional limitation resulting from the impairment(s) to determine their severity. 20 C.F.R. § 416.920a(b)(2) and (d); *see also* SSR 96-8P. Then, the ALJ rates the claimant's degree of limitation in "four broad functional areas" known as, "Paragraph B" criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Listings) §§ 12.00(A)(2)(b) and (E). Each area is rated on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4).

If the claimant's mental impairments do not meet or medically equal a listed impairment under Paragraph B, the ALJ must also consider whether the "Paragraph C" criteria are satisfied. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Listings) §§ 12.00(a)(2)(c) and (G). The Paragraph C criteria are met when a claimant has a "serious and persistent" mental disorder, with medically documented history for at least two years. *Id.* This disorder must be accompanied by: ongoing "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder;" and (2) "marginal adjustment, mean[ing] that your adaptation to the requirements of daily life is fragile . . . you have minimal capacity to

adapt to changes in your environment or to demands that are not already part of your daily life." *Id.*

If, at step three, the claimant's mental impairments do not meet or equal Paragraph B or C criteria, disability is not presumed, and the ALJ must incorporate all credibly established mental limitations into the RFC analysis at step four. The results of a claimant's PRT do not mandate the inclusion of specific language in the RFC, so long as the results are adequately conveyed. *Hess*, 931 F.3d at 209–10.

### C.    Substantial Evidence and the ALJ's Burden of Articulation.

The Social Security Act requires an ALJ to state the "reason or reasons upon which [a denial of benefits] is based. 42 U.S.C. § 405(b)(1). In doing so, an ALJ "may consider many factors," but need only explain "the dispositive reasons for their decisions, not everything else that they considered." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). An ALJ must explain the reasoning underlying his or her decision but is not required to discuss every piece of evidence in the record. *Id.* An ALJ's written opinion need only demonstrate "sufficient development of the record and explanation of findings to permit meaningful judicial review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). And while an ALJ must follow the analytical framework for determining disability, *see* 20 C.F.R. § 416.920, courts will not remand merely because an administrative decision fails "to chant every magical word correctly," so long as it is otherwise well reasoned and thorough. *Hess*, 931 F.3d at 200.

When evaluating medical opinions and prior administrative findings, ALJs must "articulate how [they] considered the medical opinions" and "how persuasive" the

opinions are. 20 C.F.R. § 416.920c(a)-(b). Of the regulatory factors, ALJs "must always discuss the two most important factors: supportability and consistency." *Zaborowski*, at 639; *see* 20 C.F.R. § 416.920c(b)(2). Supportability refers to the degree to which "a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Nolf v. Comm'r of Soc. Sec.*, No. 22-368, 2023 WL 8437872, at *1 n.1 (W.D. Pa. Dec. 4, 2023). However, an ALJ "need not reiterate the magic words "support" and "consistent" for each medical opinion assessed in the determination. *Zaborowski*, at 639.

Here, the limited question before the Court is not whether Donna S.B. is disabled. Rather, the Court must determine whether "substantial evidence" supports the ALJ's factual findings and whether the Commissioner, through the ALJ, applied the correct standards and relevant law. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019); *see also* 42 U.S.C. § 405(g). "[T]he threshold for such evidentiary sufficiency is not high . . ." *Biestek*, 587 U.S 97, at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* It "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted). Where substantial evidence supports the Commissioner's findings, courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 359 (3d Cir. 2011). Instead, the reviewing court must defer to the ALJ's evaluation of the evidence, so long as the ALJ explains which evidence was found not credible and the reasons for that determination. *See Zirnsak*, 777 F.3d at 612.

The Court cannot substitute its own judgment for the factfinder's. *Id.* at 611 (citation omitted). Thus, even if the record could possibly support a contrary conclusion, the Commissioner's decision must be affirmed where substantial evidence supports it. *See id.* The Court must evaluate the ALJ's decision as a whole to determine whether it provides a reasoned analysis supported by substantial evidence. *See Jones*, 364 F.3d at 505. Upon review of the record, the Court may affirm, modify, or reverse the Commissioner's decision, with or without remand for further proceedings. 42 U.S.C. § 405(g).

## III.  DISCUSSION

Donna S.B. argues that the Commissioner's findings and conclusions are erroneous as a matter of law and unsupported by substantial evidence. (ECF 13 at 1.) In particular, she asserts that the ALJ improperly discounted the opinions of Dr. Gillian Grannum and Dr. Gayle Sisbarro, her treating psychologist and physician, respectively. Donna S.B. maintains that the ALJ failed to properly include their opinions in determining her RFC.  (*See id.* at 1, 4, 11.) She also argues that the ALJ failed to incorporate all her established limitations in her RFC and in the vocational expert's hypothetical.  (*Id.* at 16-17.) Mindful of the threshold for substantial evidence—"only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" a review of the record shows that substantial evidence supports the ALJ's conclusion and calculation of Donna S.B.'s RFC. *Biestek*, 587 U.S. at 103. Reversal or remand is not required, and the Commissioner's determinations are AFFIRMED.

A. **The ALJ Properly Assessed Donna S.B.'s Mental Impairments in Determining Her RFC.**

To begin, there is no dispute that the ALJ properly assessed Donna S.B.'s mental limitations at steps two and three. *See* 20 C.F.R. § 416.920(a). To have her mental health impairments presumed to constitute a disability at step three, Donna S.B. could have shown that her mental impairments resulted in at least one *extreme* or two *marked* limitations in one of the four broad areas of functioning (the "Paragraph B criteria"): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Listings) §§ 12.00(A)(2)(b) and (E) (emphasis added). She did not.

The Social Security Administration's Program Operations Manual System explains that a marked limitation will be found when a claimant's impairments "interferes seriously with [their] ability to independently initiate, sustain, or complete activities." SSA POMS DI 25225.020. A "marked limitation" is more than moderate but less than severe. *Id.* In comparison, the relevant regulation explains that an "'extreme' limitation is the rating [given] to the worst limitations." 20 C.F.R. § 416.926a(e)(3)(i). A limitation is extreme when a claimant's day-to-day functioning is "very seriously limited." *Id.*

The ALJ properly analyzed Donna S.B.'s mental limitations in accordance with Paragraph B. She reviewed David Baker, Psy.D.'s consultative psychological examination, which noted that Donna S.B.'s performance of memory tasks demonstrated

mild impairments to her memory due to emotional distress from depression, anxiety, physical pain, and discomfort.  (Tr. 44, 593-97.)  The ALJ also considered Donna S.B.'s own testimony, averring that she can follow written and spoken instructions and gets along well with her neighbors.  (Tr. 44, 231-34.)  Based on the ALJ's consideration of the record, including Donna S.B.'s well-groomed appearance, appropriate eye contact and speech, average intellectual functioning and general knowledge consistent with her background, Donna S.B.'s mental impairments were no more than mild in areas one and two of Paragraph B.  (Tr. 44, 233.)

In areas three and four—concentrating, persisting, or maintaining pace, and adapting or managing oneself—the ALJ found that Donna S.B. suffered from *moderate* limitations.  (*See* Tr. 44.)  The ALJ considered the opinion of Donna S.B.'s psychologist, Dr. Grannum, and found that Donna S.B.'s limited concentration, mood swings, and increased anxiety were due to the presence of pain. (Tr. 44, 1136, 1150-51.) At the same time, Dr. Baker's examination showed that Donna S.B.'s concentration was intact: she was able to perform counting, simple calculations, and serial 7 tasks. (Tr. 44, 593-97.) Considering these opinions together, alongside Donna S.B.'s personal reports of driving a car, shopping, tracking and paying bills, and handling savings account and money orders, the ALJ found her concentration, persistence, and pace (*i.e.*, area three) to be *moderately* limited. (Tr. 44.) Likewise, based on Donna S.B.'s report that she was a single mother responsible for childcare, preparing simple meals, doing laundry, and maintaining her home and yard, the ALJ found moderate limitations in area four: "adapting or managing oneself." (Tr. 44, 228-35.) As a result, with reasonable support

and appropriate reference to the record, the ALJ found that no mental impairment could cause more than moderate limitation, singly or combined, in any of Paragraph B's four functional areas.

The ALJ also appropriately concluded that Donna S.B. did not satisfy the alternative "Paragraph C" criteria, finding that her impairments did not result in "serious and persistent" limitations. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Listings) §§ 12.00(a)(2)(c) and (G). Specifically, the ALJ observed a lack of evidence demonstrating that Donna S.B. had only a minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life. (Tr. 44-45; *see* Tr. 229-33.)

Because substantial evidence demonstrates that the severity of Donna S.B.'s mental impairments, considered singly and together, do not meet the regulations' "Paragraph B" or "Paragraph C" criteria, the ALJ did not presume disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Listings) §§ 12.00 (explaining and categorizing the degree of functional limitation resulting from a mental impairment). As a result, the ALJ reasonably incorporated her PRT findings into Donna S.B.'s RFC at step four. *See Boner v. Saul*, No. 19-1370, 2020 WL 4041052, at *15 (M.D. Pa. July 17, 2020) (finding substantial evidence supported an RFC for simple work where the record reflected generally normal mental status findings and non-disabling daily activities); *see also Weaver v. Saul*, No. 18-3296, 2019 WL 4220927, at *1, n.1 (E.D. Pa. Sept. 5, 2019) (applying *Hess* and finding that the ALJ's well-reasoned evaluation of the record justified limiting the claimant to unskilled work to account for a moderate limitation in concentration, persistence, or pace).

**B.     The ALJ's RFC Determination Properly Addressed the Opinions of Donna S.B.'s Treating Psychologist and Treating Physician**

For claims filed after March 27, 2017, like Donna S.B.'s, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.416.920c(a); *see Chung v. Comm'r Soc. Sec.*, No. 24-1974, 2025 WL 1065241, at *3 (3d Cir. Apr. 9, 2025). Under this regulation, no medical opinion, including an opinion from her personal treating physician or psychologist, is automatically entitled to controlling weight. Although Donna S.B. acknowledges that "the regulations applicable to this case no longer require specific weight to be examined to the opinions of treating or examining physicians" (ECF 13 at 5), she also argues that treating physicians' reports should be given "great weight," citing a case that predates the regulatory shift. (*Id.* (citing *Morales v. Apfel*, 225 F.3d 317 (3d Cir. 2000) (internal quotation and citation omitted)).) Nevertheless, an ALJ is "not bound to accept physicians' conclusions," and the final determination of a plaintiff's eligibility for benefits always resides with the ALJ. *Balthaser v. Kijakazi*, No. 20-6181, 2022 WL 2828848, at *6 (E.D. Pa. July 20, 2022); *see also Brewington v. Comm'r of Soc. Sec.*, No. 21-5482, 2024 WL 329529, at *8 (E.D. Pa. Jan. 29, 2024) (holding that the final decision of an applicant's eligibility is "reserved to the Commissioner").

As Donna S.B. notes, now, the ALJ must consider several factors, the most important of which are supportability and consistency. (ECF 13 at 5.) *See* 20 C.F.R. § 416.920c(a), (b)(2). The ALJ should articulate how these factors were considered in

determining persuasiveness. *Id.* The regulations require a written explanation of how these factors were applied to each medical source, however, the ALJ is not required to use the specific "magic words" of "support" and consistent" in every instance. *Zaborowski*, 115 F.4th at 639. Rather, the ALJ's determination should address the degree to which a medical source explains and backs their own opinion—*i.e.,* supportability, and how that opinion aligns with the other evidence in the record—*i.e.,* consistency. *Nolf*, 2023 WL 8437872, at *1. Ultimately, an ALJ "may consider many factors" when determining the reason or reasons for their decision, "yet base a decision on just one or two" factors. *Zaborowski*, 115 F.4th at 639.

> ### 1.    The ALJ Properly Evaluated Donna S.B.'s Treating Psychologist's Opinion at Step Four.

Donna S.B. contends that reversal or remand is required because the ALJ's RFC determination did not adequately incorporate her mental limitations as discussed by her treating psychologist, Dr. Grannum. (*See* ECF 13 at 10.) As the ALJ explained, Dr. Grannum opined that Donna S.B.'s "ability to perform tasks and duties typically required for employment would be significantly impaired due to the impact of her mental health limitations." (Tr. 50.) Donna S.B. argues that because the ALJ found that Dr. Grannum's opinion was "supported" and "mostly consistent," with the "sole exception" of a marked limitation in concentration, the doctor's "persuasive opinion with respect to [Donna S.B.'s] other limitations should have been incorporated into the RFC . . . and would have resulted in a finding of disability based on the Vocational Expert testimony and SSR 85-15." (*Id.* at 8-10; *see id. at* 50.)  In other words, Donna S.B maintains that the ALJ should

have found that Dr. Grannum's opinion was enough to show that Donna S.B. had marked limitations—beyond concentration—that were consistent with the record and sufficed to support a finding that she was disabled. The Commissioner responds that the ALJ's decision is to be "read as a whole" and contends that the "ALJ fully complied with the regulations and was not required to explicitly analyze each individual opinion." (ECF 14 at 9); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Donna S.B.'s argument is unavailing. The ALJ found Dr. Grannum's opinion, which was supported by "an explanation" and "Dr. Grannum's treatment records" was "mostly persuasive," not entirely persuasive. (Tr. 50.) The ALJ explained that the record evidence was not entirely consistent with Dr. Grannum's opinion that Donna S.B.'s mental health conditions would "significantly impair[ ]" her ability to work. (Tr. 50.) Rather, the ALJ found that Dr. Grannum's opinion was only "mostly consistent with the evidence." (Tr. 50.) It was "mostly consistent" because of Dr. Grannum's records showing that Donna S.B. had limited concentration due to pain, while "her concentration was noted to be intact in her psychiatric consultative examination, as she was able to perform counting, sampling calculations, and serial 7s tasks." (Tr. at 50 and 595.) Due, in part, to this discrepancy, the ALJ refrained from labeling Dr. Grannum's opinion as entirely persuasive. In reaching her decision, the ALJ reviewed Dr. Grannum's findings in conjunction with the broader medical evidence, including treatment notes, objective mental evaluations, and Donna S.B.'s demonstrated ability to perform daily activities. Moreover, the ALJ's appropriate determination that Donna S.B.'s mental impairments did not meet the Paragraph B or C criteria necessarily informed the step four RFC

assessment. Because the ALJ explained that Paragraph B and C findings reflected only moderate limitations in mental functioning, she assigned less restrictive limitations in the RFC.

In her Reply, Donna S.B. complains that the ALJ "could not possibly fulfill h[er] responsibility to evaluate the persuasiveness of Dr. Grannum's opinion by addressing the opinion of another medical source," *i.e.*, by weighing it against opinions from Dr. Sisbarro or other medical professionals. (ECF 15 at 3.) Yet, at the same time, Donna S.B. also argues that the ALJ's determination falls short because "Dr. Grannum's opinion was consistent with the evidence from Dr. Baker, the consultative psychologist who found a marked limitation in Plaintiff's ability to respond appropriately to usual work situations and to changes in a routine work setting." (*Id.* at 4.) In effect, Donna S.B. asks the Court to cherry-pick from the record and reweigh Dr. Grannum's opinion to favor evidence that she believes is more favorable to her. The Court cannot, however, replace the ALJ's judgment with its own. *See Zirnsak*, 777 F.3d a 611.

The ALJ's evaluation of Dr. Grannum's opinion was both consistent with the regulations and sufficient to meet the "low threshold" for substantial evidence. *Zaborowski*, 115 F. 4th at 640.

### 2.    The ALJ Properly Evaluated Donna S.B.'s Treating Physician's Opinion at Step Four.

The ALJ also acted within her discretion in finding that the opinions of Dr. Sisbarro, Donna S.B.'s treating physician, were unpersuasive. Donna S.B. contends that if Dr. Sisbarro's opinions had been credited, the Vocational Expert would have found

Donna S.B.'s RFC to preclude her from work, and thus, the ALJ would have had to find her disabled. (*See* ECF 13 at 12.) In her view, the ALJ failed "to consider Dr. Sisbarro's supporting explanations" for her opinions, and this "was reversible error." (*Id.* at 13.) The Commissioner responds that the ALJ "fully comported with the regulations in finding the opinion evidence of Dr. Sisbarro . . . to be unpersuasive by considering supportability and inconsistency. (ECF 14 at 9.) Under 20 C.F.R. § 416.9220c(a)-(b), the ALJ properly considered Dr. Sisbarro's opinions by reviewing their supportability and consistency.

Donna S.B. argues that "[a]s a specialist physician who has treated [her] for over 15 years, Dr. Sisbarro's opinion should have been assigned more persuasive value, because it is based on a longitudinal perspective, supported by her findings and explanations and consistent with the evidence from other medical sources and nonmedical sources." (ECF 13 at 16.) She specifically contends that because the ALJ found that Dr. Sisbarro's March 2019 opinion was supported by her treatment notes, the ALJ should have found that it was persuasive. (ECF 13 at 12.) Donna S.B.'s reliance on *Hammond. v. O'Malley* to support her argument is inapposite. 735 F. Supp.3d 567, 583-84 (E.D. Pa. 2024). *Hammond* explains that an ALJ "must discuss supportability and consistency," but does not dictate that a finding of supportability also requires a finding of consistency. *Id.* The ALJ's opinion did not pass muster in *Hammond* because the ALJ did not "properly articulate *either* the supportability or the consistency of [a doctor's] opinion." *Id.* at 583 (emphasis added). That is not the circumstance here. There is substantial evidence—again, a low threshold—for the ALJ's conclusion that Dr.

Sisbarro's March 2019 opinion was inconsistent with other record evidence despite being supported by her treatment notes.

The ALJ determined that Dr. Sisbarro's opinions were not consistent with the other medical evidence of record, including Donna S.B.'s treatment history, mental status findings, and her own testimony. (Tr. 49-51.) The ALJ wrote that Dr. Sisbarro's opinions were "inconsistent with the claimant's physical examinations," "inconsistent with the vision test performed by Dr. Kneifati," "inconsistent with the claimant's hobbies of reading and watching television," "inconsistent with the claimant's ability to drive a car, shop, pay bills, count change, handle a savings account, and use a checkbook or money order." (Tr. 49-51.) The ALJ also explained that Dr. Sisbarro's March 2019 opinion that Donna S.B. could not walk during an eight-hour workday was inconsistent with her own treatment notes indicating that Donna S.B. exhibited a normal gait and motor strength. (*See* Tr. 49, 990, 1023, 1061, 1076.) Additionally, the ALJ found that Dr. Sisbarro's opinion that Donna S.B. could not view a computer screen and decipher between shapes and colors of small objects, conflicts with Donna S.B.'s hobbies of reading and watching television, and Dr. Kneifati's vision test results. (Tr. 49, 232, 604.) These inconsistencies in the record provide substantial evidence for the ALJ's decision to discredit Dr. Sisbarro's March 2019 opinion.

Moreover, substantial evidence supports the ALJ's decision to find the remainder of Dr. Sisbarro's opinions unpersuasive. First, Dr. Sisbarro's February 2018 opinion was neither consistent with nor supported by Dr. Sisbarro's treatment notes. The ALJ properly explained that the opinion failed to specify Donna S.B.'s functional limitations arising

20

from her psychologically based symptoms and was further undermined by evidence that Donna S.B. could drive, shop, pay bills, count change, and manage her own banking responsibilities. (Tr. 50, 228-35). When inconsistencies are present within the record, the ALJ has an obligation to weigh the medical evidence and choose between the conflicting accounts. *See Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992); *see also Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (holding that when "[m]edical testimony or conclusions are conflicting, the ALJ is not only entitled but required to choose between them") Second, Dr. Sisbarro's other opinions predated Donna S.B.'s alleged disability onset date—October 16, 2017—and therefore were limited in relevance and persuasiveness. (Tr. 51.)

Reading the ALJ's decision as a whole, remand is not required based on the ALJ's consideration of Dr. Sisbarro's opinions.

### 3. The ALJ Properly Accounted for Donna S.B.'s Credibly Established Limitations in the RFC and Hypothetical Presented to the Vocational Expert

Finally, Donna S.B. argues that the ALJ erred by failing to incorporate all of her established limitations into both the RFC and the hypothetical presented to the VE. When given an opportunity to pose further questions to the VE beyond the ALJ's hypotheticals, Donna S.B.'s attorney did. (Tr. 103-07.)  Counsel asked whether occupations would be available to a hypothetical individual who could not reach, handle, or finger. (Tr. 105.) The VE answered that such a restriction would leave a person with "essentially no use of their hands," and "would exclude all occupations . . . ." (*Id.*) Donna S.B. argues that because the VE testified that "no work could be performed under this hypothetical, which

includes "credibly established" limitations assessed by Dr. Sisbarro and Dr. Grannum, remand is required. (ECF 13 at 17.)

Her argument is unpersuasive. Substantial evidence supports the ALJ's evaluation of both Dr. Grannum's and Dr. Sisbarro's opinions, including her conclusion that not all their assessed limitations were fully credible. The ALJ thoroughly considered the medical opinions, treatment record, and Donna S.B.'s own testimony, and adequately linked that evidence to her findings. She sufficiently explained how she calculated Donna S.B.'s RFC and why certain alleged limitations were not incorporated. She established why only part of Dr. Grannum's opinion was persuasive and why Dr. Sisbarro's opinions were discredited. An ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d 505. Read as a whole, the ALJ provided enough reasoning for finding Donna S.B.'s mental limitations moderate, ultimately informing a consistent and supported RFC assessment.

Because substantial evidence supports the ALJ's findings—and therefore her RFC determination—she was not required to include additional restrictions that she reasonably found to be unsubstantiated in her hypothetical to the VE. *See Rutherford*, 399 F.3d at 554-55 ("We do not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant. . . . Instead . . . the hypotheticals posed must accurately portray the claimant's impairments and . . . the expert must be given an opportunity to evaluate those impairments as contained in the record.") (emphasis in original, internal quotations omitted). During the administrative hearing, Donna S.B.'s attorney also asked the VE if occupations would be available to an individual with a less significant

restriction to "occasional reaching, handling and fingering," and the VE responded that available jobs would include conveyor line worker, machine tender, and fruit distributor—so even with a more restrictive limitation than the ALJ appropriately included in Donna S.B.'s RFC, she was "capable of making a successful adjustment to work that exists in significant numbers in the national economy," and, therefore, was not disabled. (Tr. 52, 105-07.) Because substantial evidence supports the RFC, which was properly presented to the VE, the ALJ did not err.

Donna S.B.'s "objections to the adequacy of hypothetical questions posed to" the VE ultimately "boil down to attacks on the RFC assessment itself" and the Court cannot substitute its own judgment for the ALJ's. *Rutherford*, 399 F.3d at 552, 554 n.8. Because the ALJ formulated a hypothetical that incorporated all of Donna S.B.'s credibly established limitations, her discretion to exclude unsupported limitations from the VE's hypothetical does not require remand.

## IV.  CONCLUSION

Upon review, the ALJ's decision and the underlying record show that her evaluation of Donna S.B. is supported by "such evidence as a reasonable mind might accept as adequate to support" her determination. *Biestek*, 597 U.S. at 103. Mindful that the threshold for "evidentiary sufficiency is not high," and for the reasons discussed above, remand for further consideration is not required. *See id.* Donna S.B.'s request for review is **DENIED** and the Commissioner's final decision is **AFFIRMED**.

An appropriate Order follows.